**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evleen Notali, | ) CIV 13-01766-PHX-MHB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Carolyn W. Colvin, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Evleen Notali's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

In November, 2009, Plaintiff filed an application for disability insurance benefits alleging disability beginning November 2005, due to a back impairment and migraine headaches. (Transcript of Administrative Record ("Tr.") at 122-28, 181.) On February 24, 2012, an Administrative Law Judge ("ALJ"), after a hearing, issued a decision denying Plaintiff disability benefits. (Tr. at 12-20.) The Appeals Council denied Plaintiff's request for review on June 28, 2013, (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. In this appeal that followed, Plaintiff asserts two claims of error: (1) the ALJ erred by rejecting reported impairment related limitations and symptoms, and (2) the ALJ erred by rejecting the treating physician's medical opinions. (Doc. 17, at 10, 13.)

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). The Commission must consider claimant's residual functional capacity and vocational factors such as age, education, and past work experience. Id.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 3, 2005 – the alleged onset date. (Tr. at 14.) At step two, he found that Plaintiff had the following severe impairments: spondylosis of the cervical spine; spondylosis of the lumbar spine; migraine headaches. (Id.)

At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 15.) Then, after consideration of the entire record, the ALJ concluded that -

> through the date last insured, [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she would be limited to frequent balancing, kneeling, crawling, and climbing, and occasional stooping, and crouching.

(Id.)

The ALJ determined that Plaintiff was able to perform her past relevant work as a data entry clerk, knowledge information specialist, and senior new business specialist, citing 20 CFR 404.1565. (Tr. at 18.) Therefore, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from November 3, 2005, the alleged onset date, through December 31, 2010, the date last insured. (Tr. at 19.)

///

///

///

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) rejecting reported impairment related limitations and symptoms, and (2) rejecting the treating physician's medical opinions. (Doc. 17, at 10, 13.)[1] Plaintiff requests that the Court remand for a computation of benefits.

**A.     The ALJ's Consideration of Plaintiff's Reported Impairments.**

Plaintiff contends that the ALJ erred by not providing "clear and convincing reasons to reject [Plaintiff]'s testimony supported by substantial evidence in the record," when the ALJ found "no evidence of malingering." (Doc. 17, at 10.) Specifically, Plaintiff argues that the ALJ's "credibility determination did not comport with the requisite legal standard." (Id., at 11.) If there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 625, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and

---

[1] This Court also considers Defendant's Opposition to Plaintiff's Opening Brief (Doc. 22), Plaintiff's Reply (Doc. 30), and Defendant's Notice of Supplemental Authority (Doc. 31).

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing

- 4 -

1  observations of treating and examining physicians and other third parties regarding, among
2  other matters, the nature, onset, duration, and frequency of the claimant's symptom;
3  precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
4  ... ." Smolen, 80 F.3d at 1284 (citation omitted).

The ALJ began his analysis by noting his obligation to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's functioning. (Tr. at 15.) The ALJ found that the objective medical evidence of record did not support the severity of Plaintiff's subjective complaints. (Tr. at 16.) The ALJ noted that if he found that Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, he had an obligation to make a finding on the credibility of Plaintiff's statements based upon consideration of the entire record. (Tr. at 15.)

Plaintiff testified at the hearing and was represented by counsel. (Tr. at 32-54.) She testified that she had previously worked in data entry, where she sat most of the day and did no lifting. (Tr. at 18.) She stated that she quit work because of headaches, back pain, and neck pain that radiated into her arms, and that activity increased her pain level, that was relieved somewhat by lying down. (Id.) Plaintiff testified that she could sit for 1 hour, but then would need to lie down for 30-40 minutes, that she could lift and carry 10 pounds with her two hands, and that her medical treatment consisted of pain management and physical therapy. (Id.) She would experience dizziness and fatigue as side effects of the medication and would take a nap during the day. (Id.) Plaintiff reported that she would experience 3-4 migraines a week, and that they lasted for 2 to 3 hours. (Id.) Plaintiff stated that she took her daughter to school in the morning, washed dishes, and cleaned the toilet and sink once

---

household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

a week. (Id.)  She could do laundry with the help of her husband, could drive a car and would go to the grocery store alone. (Id.)

The ALJ noted that, based upon Plaintiff's continued subjective complaints of neck and low back pain, as well as headaches, Plaintiff "underwent multiple diagnostic testing over a several year period, which included MRIs, CT scans, x-rays, EMG, EEG, and other diagnostic studies and testing of her cervical spine, lumbar spine, and brain." (Tr. at 16.) The ALJ reviewed numerous of those records observing that the "neurological examinations were generally unremarkable," and the tests results reviewed only showed "mild to moderate degenerative changes of the cervical and lumbar spine, with no evidence of nerve root involvement," and that "radiological testing of the brain was normal":  a May 2006 x-rays of the cervical spine, a December 2008 MRI of the cervical spine, a March 2010 MRI of the cervical spine, a November 2010 EMG nerve conduction study of the bilateral upper extremities, May 2007 x-rays of the lumbar spine, an August 2009 bone density study, September 2009 x-rays of the lumbar spine, a November 2010 MRI of the lumbar spine, September 2006 MRI of the brain, October 2006 EEG of the brain, an October 2008 CT scan of the brain.  Also, evidence in the record indicated that Plaintiff's symptoms responded to medication, physical therapy, and injections.  (Id.)  Plaintiff's treating neurologist also recorded generally normal neurological examination findings.

The ALJ also considered the third party function reports completed by Plaintiff's husband Mr. Koriel, and found that although Mr. Koriel's statements were somewhat redundant of Plaintiff's, they nonetheless described more than a minimal level of functioning:  Plaintiff had no difficulty caring for her personal needs, took her daughter to school in the morning, would go to the store if needed, could prepare meals, drive a car, perform some chores with assistance, attend church, visit with friends and family members, and take her daughter to the park on a regular basis.  (Tr. at 17.)  Mr. Koriel opined that Plaintiff could not lift more than 10 pounds, walk more than 15 minutes, and sit more than 20 minutes.  (Tr. at 17-18.)

1  In determining whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citation omitted).  An ALJ cannot disregard lay witness testimony "without comment," but may do so only upon providing specific reasons that are "germane to each witness." Id. (quoting Nyugen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, the Court finds that the ALJ properly considered the third-party statement set forth in the record and appropriately disregarded the statement by providing a "specific, germane reason." The ALJ found that Mr. Koriel's opinion as to Plaintiff's functional limitations was not supported by the clinical and objective medical evidence in the record. (Tr. at 18.) The ALJ afforded Mr. Koriel's third party function reports less than full weight.

Having reviewed the record, the Court finds that the ALJ identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding the severity of her limitations. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error. In addition, contrary to Plaintiff's assertion, the ALJ did take into account, by discussing Plaintiff's reported symptoms relative to the entire record, the limiting effects of her symptoms in formulating her residual functional capacity.

**B.     The ALJ's Consideration of the Medical Evidence.**

Plaintiff asserts that the ALJ erred in rejecting the opinion of Plaintiff's treating neurologist, Dr. Atul Syal, M.D., and specifically erred by not taking into consideration all

- 7 -

of Dr. Syal's treatment records, ignoring the treatment records of other physicians Dr. Syal referred Plaintiff to, and records of Plaintiff's emergency room visits. (Doc. 17, at 13-21.)

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester, 81 F.3d at 830. A treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. Orn, 495 F.3d at 631 (citation omitted).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

Since the opinion of Dr. Syal was contradicted by the medical evidence of record, including the state agency physicians who ultimately determined Plaintiff "not disabled," the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885 F.2d at 604.

The ALJ addressed the findings of the State agency medical consultant, who had, in February 2010 reviewed the medical evidence of record and considered Plaintiff's complaints of neck pain and headaches. (Tr. at 15.) In making his findings as to residual functioning capacity the consultant referenced an MRI of Plaintiff's cervical spine which indicated a disc bulge at C6-7, with no central stenosis and no nerve root impingement, and a normal MRI and EEG of the brain. (Id.) The consultant opined that Plaintiff could lift and or carry 20 pounds occasionally and 10 pounds frequently; and stand and/or walk 6 hours, and sit 6 hours, in an 8-hour workday, and that she could frequently balance, kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and she could occasionally stoop and crouch. (Id.) The ALJ weighed the consultant's opinion as a statement from a non-examining expert source, and found the opinion and conclusions well reasoned and supported by the clinical and objective medical evidence of record, and therefore gave great weight to the opinion and conclusions. (Tr. at 16.)

The ALJ also considered the consultive examination performed by Dr. Brian Briggs, M.D., at the request of the State agency. Dr. Briggs' objective findings did not support Plaintiff's subjective complaints and thus he found no limitations. (Tr. at 17.) Upon examination Dr. Briggs found that Plaintiff's "neck revealed no swelling or deformity, that the active range of motion was full, and Spurling's test was negative." (Id.) Plaintiff's "back" and "extremities" were normal, and with normal range of motion. (Id.) A neurological exam found Plaintiff's sensation to touch "intact in her arms and legs, and that

her coordination was normal and negative to Romberg's test." (Id.) Dr. Briggs found Plaintiff's gait normal with respect to tandem and heel/toe walking, and squatting and hopping were adequately performed. (Id.) Dr. Briggs also reviewed a December, 2010 MRI report of the cervical spine, and September 2009 x-ray report of the lumbar spine. Dr. Briggs gave a diagnoses of migraine headaches, and complaints of low back pain related to mild degenerative disc disease. (Id.)

Although the ALJ reviewed the records of Plaintiff's treating physician, Dr. Syal, who had opined that Plaintiff could not return to work, he concluded that "Dr. Syal's opinions and conclusions appear to be based primarily on [Plaintiff]'s subjective complaints of neck and low back pain, and headaches, . . . [and that] Dr. Syal did not reference any medical records, report of examination, clinical reports, radiology reports or other diagnostic testing, or any other medical records in support of his opinions and conclusions." (Tr. at 16.) The ALJ noted that Plaintiff had "good results for her complaints of neck and low back pain with several trials of physical therapy, . . . [] and also underwent facet injections and epidurals for her complaints of pain." (Id.) The ALJ also pointed out inconsistencies in Dr. Syal's opinions: in a 2011 clinical note he opined that Plaintiff was "unable to sit or stand for very long and was otherwise unable to return to work," yet in January 2012, he opined that Plaintiff "had a moderate degree of restriction, or an impairment that affected but did not preclude the ability to function." (Id.) The ALJ found that Dr. Syal's extreme limitations were not supported by the objective record.

The Court finds that the ALJ properly weighed the medical source opinion evidence, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting the physician and evidence which Plaintiff relies upon in her brief. The ALJ noted that Dr. Syal reported inconsistent limitations, and discredited Dr. Syal's assessments due to the medical evidence as a whole. The ALJ also found that the opinions were conclusory, lacked supporting clinical findings, and were based in part on Plaintiff's own subjective complaints. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity between doctor's questionnaire responses and her medical records

provides a specific and legitimate reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"); Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair, 885 F.2d at 605) (an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible).

The ALJ's noted inconsistency in Dr. Syal's conclusions, for instance, the inconsistency between Dr. Syal's clinical findings and diagnostic testing, and Dr. Syal's extreme functional limitation assessment, was a valid reason to discount Dr. Syal's opinion. In addition, the ALJ noted that the objective medical records as a whole, and the opinions of other medical doctors (to include examining doctor Briggs) did not support the functional limitations assessed by Dr. Syal, and the ALJ also noted that the medical records demonstrated improvement of Plaintiff's symptoms with treatment. Plaintiff insists that the ALJ ignored medical records that support Plaintiff's reported limitations. (Doc. 17, at 13-20.) This Court has reviewed those cited records, and finds that many of those records actually support the ALJ's analysis, some are illegible, some are taken out of context, and some are dated after Plaintiff's December 2010 date of last insured.[3]

---

[3] October, 2009, patient doing well, mild degenerative joint disease - benign physical examination findings (Tr. at 202-203): January, 2009, patient reported pain - not taking pain medications - patient advised not to lift over 20 pounds (Tr. at 207): October, 2006, patient doing very well (Tr. at 211): May, 2007, x-rays showed minimal spondylosis (Tr. at 317): September, 2009, MRI/x-rays revealed mild degenerative disc disease (Tr. at 216-17): 2006, normal EEG and brain MRI (Tr. at 219-20): January, 2011, patient doing better in terms of headaches (Tr. at 614-15): October, 2010, headaches under control (Tr. at 617): November, 2010, MRI revealed mild to moderate findings relative to spondylosis and disc bulges (Tr.

Essentially, Plaintiff asserts that the evidence of record should have been interpreted differently to support a finding of disability; however, the ALJ's decision must be upheld as it is supported by another "rational interpretation" of the evidence. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Reddick, 157 F.3d at 720-21 ("If the evidence can reasonably support either affirming or reversing the [ALJ]'s conclusion, the court may not substitute its judgment for that of the Secretary."); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Chaudry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012) (a court may not second-guess the ALJ finding, if it is supported by substantial evidence). The ALJ's conclusions regarding the medical source opinion evidence were supported by a rational interpretation of the evidence considered. The Court finds that the ALJ properly considered and weighed all of the medica source opinion evidence (including the state agency physicians' assessments) relating to Plaintiff's impairment, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Syal's opinion.

**C.     Conclusion.**

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

///

///

///

///

---

at 619): December, 2011, patient stable - refrain from lifting weights over 10 pounds (Tr. at 622-23): 2008, stable appearance of cervical spine (Tr. at 510-11): 2006-2011 records Dr. Rao, largely illegible (Tr. at 232-283, 514-15, 597-99), 2009-2010, patient showed improvement with physical therapy (Tr. at 517-46): in January, 2011, patient reported doing well (Tr. at 694-95): in October, 2011, patient reported no headaches and no neck pain (Tr. at 684), and in July, 2011, patient reported same (Tr. at 686).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 21st day of September, 2015.

Michelle H. Burns
United States Magistrate Judge